IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORTHSTAR HEALTHCARE CONSULTING, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAGELLAN BEHAVIORAL )<br>HEALTH SYSTEMS, LLC, et al., )<br>)<br>Defendants. ) | CIVIL ACTION NO.<br>_____ |

## NOTICE OF REMOVAL

Defendants Magellan Behavioral Health Systems, LLC, Magellan Healthcare, Inc., Magellan Behavioral Services, Inc., Magellan Health, Inc., Magellan Healthcare of Georgia, Inc., Magellan Medicaid Administration, Inc., and Magellan Rx Management, LLC ( "Defendants"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby give notice that the case captioned *NorthStar Healthcare Consulting, LLC v. Magellan Behavioral Health Systems, LLC, et al.*, is hereby removed from the Superior Court of Gwinnett County, Georgia where it is pending as Case No. 17A-CV-01468-6, to the United States District Court for the Northern District of Georgia, Atlanta Division. As grounds for removal, Defendants state as follows:

## I.  PROCEDURAL AND FACTUAL BACKGROUND

1. On or about February 17, 2017, NorthStar Healthcare Consulting, LLC ("Plaintiff" or "NorthStar") filed this action in the Superior Court of Gwinnett County, Georgia against Defendants arising out of a April 10, 2013 Service Agreement entered into between NorthStar and Magellan Health, Inc. f/k/a Magellan Health Services, Inc.

2. A true and correct copy of each pleading filed in the Superior Court of Gwinnett County, Georgia as of the date of this notice, is attached hereto as **Exhibit 1**.

3. Defendants were served with the Complaint on or about February 22, 2017. This Notice of Removal is being filed within 30 days of service of the initial pleading setting forth the claim for relief, and is therefore timely pursuant to 28 U.S.C. § 1446(b).

4. The United States District Court for the Northern District of Georgia, Atlanta Division, is the federal judicial district embracing the Superior Court of Gwinnett County, Georgia, where this suit was originally filed. Venue is therefore proper under 28 U.S.C. §§ 81(c)(2) and 1441(a).

## II.  GROUNDS FOR REMOVAL

5. Pursuant to 28 U.S.C. § 1332, Plaintiff's Complaint could have been filed in this Court, in that there is complete diversity of citizenship between

Plaintiff and the only properly-joined Defendants herein, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

### III. DIVERSITY OF CITIZENSHIP

#### A. COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN PLAINTIFFS AND THE ONLY PROPERLY JOINED DEFENDANTS.

6. Plaintiff NorthStar is a limited liability company organized under the laws of the State of Georgia with its principal place of business in Alpharetta, Georgia. Complaint ("Compl."), ¶ 1. As a limited liability company, NorthStar's citizenship is determined by the citizenship of its members. *See Mallory & Evans Contractors & Engineers, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011). NorthStar's sole member is Emily Ann Baker, a citizen of Georgia.

7. Magellan Behavioral Health Systems, LLC is a limited liability company organized under the laws of the State of Utah with its principal place of business in the State of Maryland. Compl. ¶ 2. Magellan Behavioral Health Systems, Inc.'s sole member is Magellan Healthcare, Inc., a corporation organized under the law of Delaware with its principal place of business in the State of Maryland. Magellan Behavioral Health Systems, Inc. is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Georgia within the meaning of the Acts of Congress relating to the removal of cases.

8. Magellan Healthcare, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Maryland.

Compl. ¶ 3. Magellan Healthcare, Inc. is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Georgia within the meaning of the Acts of Congress relating to the removal of cases.

9. Magellan Behavioral Services, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Maryland. Compl. ¶ 4. Magellan Behavioral Health Systems, Inc. is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Georgia within the meaning of the Acts of Congress relating to the removal of cases.

10. Magellan Health, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Arizona. Compl. ¶ 5. Magellan Health, Inc. is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Georgia within the meaning of the Acts of Congress relating to the removal of cases.

11. Magellan Medicaid Administration, Inc. is a corporation organized under the laws of the State of Virginia with its principal place of business in the State of Virginia. Compl. ¶ 7. Magellan Medicaid Administration, Inc. is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Georgia within the meaning of the Acts of Congress relating to the removal of cases.

12. Magellan Rx Management, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Arizona. Compl. ¶ 8. Magellan Rx Management, LLC's sole member is Magellan Pharmacy Services, Inc., a corporation organized under the laws of Delaware with its principal place of business in the State of Maryland. Magellan Rx Management, LLC is not now, and was not at the time of the filing of the Complaint, a citizen or resident of the State of Georgia within the meaning of the Acts of Congress relating to the removal of cases.

13. Because the Plaintiff and the only properly-named defendants are residents of different states, complete diversity exists between the parties.

### B. PLAINTIFFS HAVE FRAUDULENTLY JOINED MAGELLAN HEALTHCARE OF GEORGIA, INC.

14. Defendant Magellan Healthcare of Georgia, Inc. is a corporation organized under the laws of the State of Georgia. Compl. ¶ 6. Magellan Healthcare of Georgia does not currently conduct any business, so it has no principal place of business.[1] *See* ¶ 21, *infra.* Although Magellan Healthcare of Georgia, Inc. facially appears to be a non-diverse defendant, its citizenship can be disregarded for purposes of diversity jurisdiction because it was fraudulently joined in this action.

15. When a defendant has been fraudulently joined, the Court should disregard its citizenship for purposes of determining whether a case is removable

---

[1] Magellan Healthcare of Georgia's registered principal office address is in Maryland.

5

based on diversity of citizenship. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (overruled on other grounds). Indeed, it is well-settled that "the Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

16. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *N. Jackson Pharmacy, Inc. v. McKesson Corp.*, No. 5:14-CV-02371-SGC, 2015 WL 5011346, at *2 (N.D. Ala. Aug. 24, 2015) (citing *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)). The "proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Id.* Although the district court must "resolve all questions of fact . . . in favor of the plaintiff," "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* (citing *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005).

17.     The Eleventh Circuit recognizes three types of fraudulent joinder: (1) where there is no possibility that the plaintiff can establish any cause of action against the resident defendant under either the law or the facts alleged, (2) where plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court, and (3) where the plaintiff has committed an egregious misjoinder under Rule 20. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir. 1989); *Tapscott*, 77 F.3d at 1360 n.17; *Triggs*, 154 F.3d at 1287.

18.     Here, Magellan Healthcare of Georgia, Inc. is fraudulently joined because there is no possibility that Plaintiff can establish a cause of action against it. *None* of the causes of action asserted in the Complaint specifically reference Magellan Healthcare of Georgia, Inc. Instead, Plaintiff makes general allegations that all seven "Defendants" breached a contract with Plaintiff and committed various torts resulting in harm to Plaintiff. The only allegations that even mention Magellan Healthcare of Georgia, Inc. are found in paragraph 6: "Magellan Healthcare of Georgia, Inc. and its affiliates solicited services from and contracted with NorthStar as set forth herein." Compl, ¶ 6. As discussed below, however, these vague allegations are not only inaccurate, but completely implausible.

19.     Magellan Healthcare of Georgia, Inc. ("Magellan of Georgia") was formed on May 14, 2014—more than a year after the Service Agreement between NorthStar and Magellan Health, Inc. was executed—for the sole purpose of

responding to a March 20, 2014 Request for Proposal ("RFP") issued by the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD"). At that time, DBHDD was seeking to contract with a qualified independent supplier for administration of Georgia's public integrated behavioral Health and intellectual and development disability services system. (Declaration of Glenn Stanton ("G. Stanton Decl."), ¶ 3, attached hereto as **Exhibit 2**).

20. The April 10, 2013 Service Agreement entered into between NorthStar and Magellan Health Services, Inc. involves Pharmacy Benefit Management ("PBM"). Compl. ¶ 12. There was absolutely no Pharmacy Benefits Management ("PBM") component of the RFP issued by DBHDD. (G. Stanton Decl. ¶ 4.) Rather, the RFP was issued for the provision of <u>behavioral health benefits</u> administration only. (*Id.*) Magellan of Georgia has never bid for PBM business, and is neither qualified nor licensed to provide PBM services. (Declaration of Jeff West ("J. West Decl."), ¶ 12, attached hereto as **Exhibit 3**).

21. Magellan of Georgia responded to DBHDD's RFP on May 27, 2014, but ultimately lost the bid to its competitor, ValueOpions. (G. Stanton Decl. ¶¶ 5-6.). Since losing the bid, Magellan of Georgia has conducted no business whatsoever in the State of Georgia or elsewhere. (G. Stanton Decl. ¶ 7.) Magellan of Georgia has never earned any revenue or incurred any debts, never owned any assets, never maintained any bank accounts, never entered into any contracts with

any entities or individuals, never had any employees, never maintained a website, and never owned any intellectual, real, or personal property. (J. West Decl. ¶¶ 5-11.) Magellan of Georgia has never entered into any contracts with NorthStar and has never had any business dealings with NorthStar. Magellan Health, Inc. has never executed a Statement of Work pursuant to which NorthStar would be performing services for Magellan of Georgia. (J. West. Decl. at ¶¶ 12-15.)

22. Accordingly, there is no reasonable basis from which it may be inferred that Magellan of Georgia is in any way liable to the Plaintiff for the claims asserted in this case, and there is no possibility of recovery by Plaintiff against Magellan of Georgia. Clearly, the only reason for Plaintiff's joinder of Magellan Healthcare of Georgia in this action is that it is a citizen of the State of Georgia, and its inclusion would defeat diversity jurisdiction. Because Magellan of Georgia, has no real connection to this controversy, its citizenship should not be considered by the Court in evaluating diversity jurisdiction. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97(1921)) ("A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'"), abrogated in part and on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

23. Because Magellan of Georgia was fraudulently joined in this action, complete diversity exists between the properly-named and joined parties.

### IV. THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL THRESHOLD

24. It is equally clear that the amount in controversy exceeds the sum of $75,000.00 pursuant to 28 U.S.C. § 1332.

25. In satisfying its burden on removal, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 754 (11th Cir. 2010). To the contrary, "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061-62 (11th Cir. 2010) (quoting *Pretka,* 608 F.3d at 754). "Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount. Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062 (internal quotations omitted). *See also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014)) ("[A]ll that is required [by a removing party in its notice of

removal] is a 'short and plain statement of the grounds for removal,' including 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'").

26. Plaintiff alleges that it contracted to provide pharmacy audit and related services to the Defendants. Compl. at ¶ 12. According to Plaintiff, in order to perform its services under the Contract, it "utilized and further developed confidential and proprietary algorithms that are designed to find pharmacy claims that are fraudulently, erroneously, or suspiciously filed. . . ." *Id*. at ¶ 17.

27. The value of the services provided by Plaintiff is significant. For example, Magellan Health, Inc. paid Plaintiff over $90,000 in 2013, over $360,000 in 2014, over $590,000 in 2015, over $560,000 in 2016, and over $60,000 in 2017 for its services. (Declaration of Karen Aubuchon ("K. Aubuchon Decl."), ¶ 4, attached hereto as **Exhibit 4**).

28. Plaintiff contends that the Magellan Defendants have misappropriated for their own use and benefit the proprietary information essential to the performance of Plaintiff's services.

29. As a result of Defendant's alleged misappropriation, Plaintiff seeks breach of contract damages, damages for unjust enrichment, damages pursuant to the Illinois Trade Secrets Act, damages pursuant to the Illinois Uniform Deceptive Trade Practices Act, and costs and attorney's fees. Compl. at p. 13

30. The Complaint contends that Defendants have been unjustly enriched by their use of the allegedly proprietary information and owe Plaintiff compensation for their use of this information. As explained above, the value of this information and Plaintiff's services is substantial given that Magellan Health, Inc. has paid Plaintiff over $1.6 million over the past four years for Plaintiff's application of the alleged proprietary information.

31. Thus, the amount of Defendants' alleged unjust enrichment from the use of Plaintiff's allegedly proprietary information easily exceeds the jurisdictional threshold.

32. In addition to these compensatory damages, Plaintiff also seeks exemplary damages on its Illinois Trade Secrets Act claim. Under the Illinois Trade Secrets Act, Plaintiff can recover twice the amount of its compensatory damages. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 730 (7th Cir. 2003).

33. Further, Plaintiff seeks punitive damages. Plaintiff's demand for punitive damages is, of course, included in the determination of the amount in controversy. *See Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered.") (internal citations omitted); *Bell v.*

*Preferred Life Assurance Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) (claims for compensatory and punitive damages should be aggregated to determine amount in controversy).

34. With respect to the additional injunctive relief that Plaintiff seeks, the monetary value of this remedy would also be in excess of $75,000. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 973 (11th Cir. 2002) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted."). As demonstrated above, the value of Plaintiff's services that rely on the allegedly proprietary information is well in excess of the jurisdictional minimum. The value of an injunction that prevents Defendants from using this information would correspondingly exceed that threshold.

35. Thus, the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332 is satisfied. It is clear from the face of the Complaint itself, the facts asserted, the broad scope of damages alleged, and the evidence submitted herewith, that the amount in controversy is well in excess of $75,000.

## CONCLUSION

Because Magellan of Georgia was fraudulently joined, there exists complete diversity of citizenship between the Plaintiff and the only properly-named

Defendants. In addition, the amount in controversy exceeds the jurisdictional minimums required by the provisions of § 1332 that allow removal of this action.

WHEREFORE, Defendants respectfully removes this action from the Superior Court of Gwinnett County, Georgia, Civil Action No. 17-A-01468-6, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Written notice of the filing of this Notice of Removal will be given to the adverse parties as required by law. A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will promptly be filed with Clerk for the Superior Court of Gwinnett County, Georgia.

>Respectfully submitted by,
>
>*s/ Starr Turner Drum*
>Starr Turner Drum
>Georgia Bar No. 733029
>*One of the Attorneys for Magellan*

OF COUNSEL:
MAYNARD, COOPER & GALE, PC
1901 6th Avenue North
Suite 2400
Birmingham, AL 35203
sdrum@maynardcooper.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following via U.S. Mail, postage pre-paid, on this the 24th day of March, 2017:

David I. Matthews
George B. Green, Jr.
WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC
3344 Peachtree Road
Suite 2400
Atlanta, GA 30326


        *s/Starr Turner Drum*
        **OF COUNSEL**